IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

WESTERN DIVISION

UNITED STATES

V.                              CRIMINAL ACTION NO. 5:05-cr-15-DCB-JCS

VINCENT J. PALERMO, II                              DEFENDANT

ORDER

BEFORE THE COURT is Vincent J. Palermo, II ("Defendant")'s Motion for Early Termination of Supervised Release ("Motion"). [ECF No. 15]. The Government filed a Response to Defendant's Motion for Early Termination of Supervised Release on May 16, 2024. [ECF No. 17]. The Court, having examined the Motion, the record, the applicable legal authority, and being fully informed in the premises, finds that the Motion shall be denied.

I. Background

In November 2005, Defendant was indicted by a federal grand jury in the Southern District of Mississippi on one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). [ECF No. 1]. The Court accepted Defendant's guilty plea in June 2006 and sentenced Defendant to twenty-nine (29) months imprisonment. [ECF No. 10] at 2. Additionally, the Court imposed a life term of supervised release "pursuant to U.S.S.G. §5D1.2(c), and as provided by statute." Id. at 3.

Defendant filed this Motion [ECF No. 15] on March 26, 2024, and makes several allegations, including (1) he never had physical contact with children; (2) his Low Risk status; (3) his satisfactory completion of seven consecutive polygraphs; (4) his willingness to continue to register as a sex offender every ninety (90) days with Warren County Sherriff and Mississippi Public Safety; (5) no violations or incidents in more than fifteen years; (6) his thirty-three (33) years of marriage; (7) his history of compliance with counseling as mandated by the Justice Department; and (8) his medical conditions.[1]

The Government filed a Response in Opposition to the Motion [ECF No. 17] on May 16, 2024, stating that "Defendant has no legitimate argument for early termination of his supervised release and the 18 U.S.C. § 3553(a) factors weigh against it." Id. at 8.

II. Legal Standard

A defendant may file a motion for early termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1). See United States v. Tacker, 2016 WL 1078267, at *1 (N.D. Miss. Mar. 17, 2016) (citing Pepper v. United States, 562 U.S. 476 (2011)). A court may

---

[1] Defendant cited the following medical conditions to support his Motion: "[d]ebilitating arthritis in hips, knees, and feet," high blood pressure that requires regular monitoring, "[h]ernia mesh surgery," and "[i]liac artery stent surgery" for which he experiences side effects. Id.

"terminate a term of supervised release at any time after the defendant has severed one year of supervised release. . . [and] discharge the defendant from supervised release 'if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.'" <u>United States v. Jeanes</u>, 150 F.3d 483, 484 (5th Cir. 1998) (citing 18 U.S.C. § 3583(e)(1)). These factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(3) the need for the sentence imposed to protect the public from further crimes of the defendant;

(4) the need for the sentence imposed to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;

(5) the kinds of sentence and the sentencing range for the category of offense and category of defendant and whether the terms of supervised release were violated;

(6) the pertinent policy statements by the Sentencing Commission;

(7)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(8)   the need to provide restitution to any victims of the offense.

See 18 U.S.C. §§ 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7).

## III. Analysis

Supervised release is not a form of punishment but is "intended to facilitate 'the integration of the violator into the community while providing the supervision designed to limit further criminal conduct.'" Jeanes, 150 F.3d at 485 (citing United States v. Joseph, 109 F.3d 34 (1st Cir. 1997)). The ultimate goal of supervised release after imprisonment is to "reduc[e] recidivism," which benefits the whole of society. Id. Essentially, supervised release is a privilege afforded to some defendants after imprisonment, which largely serves as a check against future offenses. See United States v. Pitman, No. 9:18-CR-16, 2022 WL 2328868, at *1 (E.D. Tex. June 28, 2022) ("Early termination of supervised release is not an entitlement.") (citing United States v. George, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021)).

District courts have broad discretion to decide whether a defendant's supervised release should be terminated. Tacker, 672

4

F. App'x. 470, 471 (5th Cir. 2017). Normally, defendants who simply comply with the terms of their supervised release do not convince district courts to prematurely terminate supervised release. United States v. Smith, No. 3:10-CR-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 7, 2014). "[I]f every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'" Pitman, 2022 WL 2328868, at *2 (citations omitted).

Generally, early termination is "warranted only in cases where the defendant shows changed circumstances." United States v. Guidry, No. 3:19-cr-332-S, 2020 WL 908542 (N.D. Tex. Feb. 13, 2020) (quoting United States v. Jones, No. Crim. A.  V-11-21, 2013 WL 2417927 at *1 (S.D. Tex. June 4, 2013)); see also, United States v. Hutchins, No. 3:08-CR-083-D, 2023 WL 8606767, at *1 (N.D. Tex. Dec. 11, 2023) (denying defendant's motion for early termination of his supervised release for simply following expectations of supervised release). "This is because, if a sentence was 'sufficient, but not greater than necessary' when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised release." Pitman, 2022 WL 2328868 at *2. (citations omitted). Those "changed circumstances" must convince the district court that early termination of supervised release is

warranted under the § 3553(a) factors. United States v. Garcia, No. 23-50629, 2024 WL 2013879 (5th Cir. 2024).

The Government opposes Defendant's Motion, stating that Defendant has only demonstrated his compliance with the supervised terms of his release. [ECF. No. 17]. Determination as to whether Defendant's supervised release should be terminated must be made in light of the factors in 18 U.S.C. § 3553(a). 18 U.S.C. § 3583(e). Here, Defendant "fail[s] to put forth an argument for or against any Section 3553 factors so the Court will analyze accordingly." United States v. Lynn, No. S90-00053(P), 2022 WL 2446328 (S.D. Miss. May 31, 2022).

In briefing, the Government cites three § 3553(a) factors that are unfavorable to Defendant. This Court will now address each factor in turn.

## A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

Possession of Child Pornography has been described as "a serious offense that results from the victimization and exploitation of children." Hutchins, 2023 WL 8606767, at *2. This is also true for defendants who have never had physical contact with children. See United States v. Carpenter, 647 F. App'x. 397, 401 (5th Cir. 2016) (finding a life term of supervised release appropriate even though the defendant only possessed child

pornography and never distributed or produced it). Historically, courts have imposed a life term of supervised release on defendants convicted of such crimes. See United States v. Carpenter, 647 F. App'x. 397, 401 (5th Cir. 2016).

Acknowledging the serious nature of this offense, the Court must now consider Defendant's history. 18 U.S.C. § 3553(a)(1). Evidence of Defendant's conduct since his release from custody in 2008 provides the "most up-to-date picture of [Defendant's] 'history and characteristics.'" Pepper, 562 U.S. at 492. Defendant states that since his release, he has "receiv[ed] counseling every three months as instructed by the Justice Department." [ECF. No. 15]. Once again, this is simply evidence of complying with the terms of supervised release and does not favor early termination. Smith, 2014 WL 68796, at *1.

Defendant's history of recidivism should be considered as well. Unlike the defendant in Carpenter, Defendant did attempt to produce and distribute child pornography in 1988, for which he attended court-ordered counseling. [ECF No. 9] at 3, 7. Despite the mandatory counseling and subsequent voluntary counseling, Defendant recidivated in 2004 with the instant offense. Id. at 7. "[T]he serious nature of the crimes and [defendant]'s history and characteristics significantly outweigh [his] actions after his latest release from prison." Lynn, 2022 WL 2446328 at *4.

Therefore, Defendant has not demonstrated that counseling is a changed circumstance that warrants termination of his lifetime supervised release, and this factor weighs against him.

B. The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct and to Protect the Public from Further Crimes of Defendant

Supervised release is a mechanism to deter offenders from recidivism while simultaneously allowing reentry into society. Jeanes, 150 F.3d at 485. But the crime of possessing child pornography "is a serious offense that results in the victimization and exploitation of children," Hutchins, 2023 WL 8606767, at *2, and "pedophiles are typically recidivists." Allison, 447 F.3d 402, 407 (5th Cir. 2006).

Courts have upheld specialized conditions on those convicted of crimes regarding child pornography, including restricting the offender from computer access, to "prevent recidivism and protect the public." United States v. Paul, 274 F.3d 155, 169 (5th Cir. 2001). Defendant's supervised release maintains this condition, which like Paul, is "unquestionably related to his history and characteristics." Id. at 171.

Defendant's first conviction relating to child pornography occurred in 1988, where Defendant consequently entered the Pretrial Diversion Program after "attempt[ing] to market a

pornographic video tape of a minor . . . and later [taking] the film to a dealer in Louisiana in attempt to sell the film." [ECF No. 9] at 6. The Government cites several cases to show that courts do not allow early termination of supervised release when there is a strong need for deterrence that outweighs any favorable § 3553(a) factor. E.g., United States v. Gaharan, No. 22-30364, 2023 WL 6162779 at *1-2 (5th Cir. 2023) (denied early termination of supervised release due to concerns of defendant's likelihood of reoffending). This Court agrees. Given Defendant's history of reoffending and his lack of violations in the past fifteen years, it can be assumed that his supervised release is functioning appropriately to deter Defendant from reoffending. [ECF. No. 15]. Therefore, this factor does not weigh in favor of Defendant's termination of his lifetime supervised release.

C. Defendant's Lifetime Supervised Release is Consistent with Other Defendant's Sentences for Possession of Child Pornography

Courts frequently impose a life term of supervised release for defendants convicted of possession of child pornography. See, e.g., Carpenter, 647 F. App'x. at 399. In Carpenter, the defendant was sentenced to six years of prison and lifetime supervised release. Id. at 398. The defendant stated that he had only possessed child pornography and never distributed or produced it,

but the Fifth Circuit upheld the district court's imposition of lifetime supervised release and the special conditions that followed. Id. at 399.

Unlike Carpenter, Defendant has a history of attempting to distribute and produce child pornography. [ECF No. 9] at 6. If defendants like Carpenter are still subject to a lifetime of supervised release, it only follows that Defendant would be subject to the same sentence or higher. Carpenter, 647 F. App'x. at 399 ("The [Defendant] committed a serious crime, even if he did not produce or distribute child pornography."). Accordingly, this factor weighs against Defendant.

### D. Defendant's Marriage and Medical Conditions

Defendant also mentions two other reasons to support the termination of his lifetime supervised release: his thirty-three-year marriage and his alleged medical conditions. [ECF. No. 15]. Courts have not found either of these arguments to warrant termination of lifetime supervised release.

For example, one district court denied termination of supervised release for a defendant whose family "stood by him" because "termination of his . . . supervised release would not reflect the seriousness of his offense, deter future criminal conduct, and provide needed structure for [defendant]'s continued rehabilitation." Hutchins, 2023 WL 8606767 at *2. Here, it is

fortunate that Defendant's marriage has endured his sentence, but it is not convincing in the eyes of this Court to warrant termination of his lifetime supervised release.

Moreover, although courts have allowed early termination of supervised release due to the defendant's significant, ongoing medical conditions, "early termination of supervised release is not granted unless there are significant medical concerns . . . ." United States v. Bergeron, No. 1:14-CR-65(1), 2024 WL 185648 at *4 (E.D. Tex. Jan. 16, 2024). In United States v. Pittman, the district court denied the defendant's motion for early termination of supervised release, finding that an incurable blood disease does not "implicate the rehabilitation and reintegration purposes of the § 3553(a) factors." No. 3-15-CR-221-O(1), 2020 WL 6564724 at *1 (N.D. Tex. Nov. 9, 2020). Here, Defendant's medical conditions do not affect the underlying purposes of serving supervised release. In fact, Defendant's medical conditions do not "stand in the way of reengaging again with criminal activity." Lynn, 2022 WL 2446328, at *4. Further, the lifetime term of supervised release does not inhibit Defendant from receiving the proper medical care. See Garcia, 2024 WL 2013879, at *1. This is the only argument that Defendant presents of a "changed circumstance," but it is still not enough to convince this Court to terminate his lifetime supervised release. Therefore, this Court finds that Defendant's Motion shall be denied.

11

IV. Conclusion

Accordingly,

IT IS HEREBY ORDERED that Defendant's Motion for Early Termination of Supervised Release [ECF No. 15] is DENIED.

SO ORDERED, this 13th day of June, 2024.

/s/ David Bramlette
DAVID C. BRAMLETTE III
UNITED STATES DISTRICT JUDGE